19-2101. Counsel, Mr. Schooley, whenever you're ready, we're ready to proceed. May it please the Court, this is Steve Schooley out of Orlando, Florida, and I represent the interveners, Robert Kinghorn and Law Offices of Frederick Huff, and have also represented the Florida Company Ground Improvement Techniques, or GIT. The Kinghorn and Huff Law Firm seek reversal of the Court of Claim April 30, 2019, denial of their motion to intervene, to seek a timely Rule 59e motion to alter or amend the Court's January 11, 2019 U.S. judgment against the government. On page, this is Judge Wallach, on page 8 of the red brief, the government provides some salient facts about the agreement respecting litigation, and the impact it has on Mr. Kinghorn and Mr. Huff's interest here. In particular, our earlier conclusion that Mr. Kinghorn and Mr. Huff, quote, have expressly signed away any control, close quote, they may have had in this litigation. Do you bring those facts up anywhere in your blue brief, and if so, where, and if not, why not? Well, we didn't, because they didn't, they never did sign away control. Wait, wait, wait, there was an express finding. Can you just ignore that? Well, the rights of Kinghorn and Huff arise out of the same agreement respecting litigation as the other three secured creditors did, but then the secured creditors transferred their rights to Kinghorn and Huff in the settlement agreement, addressing the remaining post-judgment interest that hasn't been awarded yet. So, even if they are... So it makes the, excuse me, it makes the decision of this court irrelevant? Well, no, it doesn't make it irrelevant, because the agreement that Kinghorn and Huff entered into with the three secured creditors transferred all their rights to Kinghorn and Huff. Kinghorn and Huff now stand in the shoes of those three secured creditors as well as themselves. On page 32 of the red brief, the government, quoting the court below, argues that any interest your clients may have is not against the DOE, but against the three secured parties. What legal right as a GIT equity holder does Mr. Kinghorn have against the government? And same for Mr. Huff. Hasn't he signed away his right to independently sue? Well, no, he hasn't signed it away, any more than the secured creditors had signed it away. They all have the right to seek recovery against the government, because the Pennsylvania Bankruptcy Court preserved that right for either of the six secured creditors, including Mr. Kinghorn, in the agreement respecting litigation, or it could be sought by GIT on behalf of all of them. Let's assume that you're right, and that you had a ground for intervention. You waited months after you knew that the secured creditors were not seeking this post-judgment interest to move for leave to intervene. How is waiting months to move to intervene until there's a judgment here not an untimely request? Well, when the secured creditors moved for summary judgment, they requested the post-judgment interest. In the appendix, page 166, they were seeking the full amount of the GIT judgment. And then in appendix 198, they requested CDA interest on a set amount from October 22, 2000 until paid, plus any applicable post-judgment interest. Yeah, but that's different post-judgment interest. You're confusing two things that are important to keep distinct. They requested post-judgment interest on their claim, but they didn't request the post-judgment interest that was awarded in the earlier litigation, which is what you're seeking now. Well, you don't read it that way, Your Honor. It says, plus any applicable post-judgment interest. It doesn't say it's limited to anything. It should be the post-judgment interest that was awarded in the second modified amended judgment, which is set forth in appendix 428. So your only argument is that this refers to post-judgment interest, and that somehow a reasonable person would have construed that to include the post-judgment interest from the earlier litigation? Yes, because that's the kind of relief that they're seeking. Is there anywhere-I mean, the specific relief requested did not include non-CDA interest, which is what you're talking about here, right? Right. Can you point out to anything other than the reference to full amount that would suggest that we were talking about a request for non-CDA interest? Yes, the relief requested at appendix 198, and then repeated again at appendix 806. Well, what does it say at 198? It says the full amount, right? Well, that's actually at appendix 166. Okay, and what's it? And then at appendix 198, it's requested plus any applicable post-judgment interest, cost, attorneys, and other expenses deemed equitable and just. That's post-judgment interest on this judgment, not post-judgment interest on the earlier judgment. Well, it's the same. No, it's not the same. They requested certification interest until it was paid, and then they say plus any applicable post-judgment interest. The only thing that could be the plus post-judgment interest is the interest that's set forth as post-judgment award in the original second modified amended judgment at appendix 428. It's clearly set out there as post-judgment interest, and they were requesting plus any applicable post-judgment interest on top of the CDA interest. But you are following the proceedings in this entire case, and I assume you agree with the government. Tell us if you don't that if there were a claim for non-CDA interest, there would have been a necessary argument and adjudication with respect to the entitlement to that particular interest. There was no discussion, no argument, no analysis of that. Was there? And don't you agree that somebody would have had to say something about it in order to award it? Well, I would have expected that the secured creditors, and we didn't know what their overall strategy was, but they requested... You know what the filings were. You were getting copies of their filings. So wouldn't you have expected, if non-CDA interests were on the table, that something in the filings, something in the paper somewhere would have dealt with the entitlement to that particular type of interest? Well, we thought that it was addressed. We thought it was addressed at Appendix 166 and Appendix 198, and then in the reply at Appendix 806. Judge Wallach... We didn't think we had... Judge Wallach... We didn't think we had the right... I'm sorry. This is Judge Wallach. Did you make inquiry at that point when you thought so? No, we didn't, because we didn't think it was necessary. If we had moved to intervene at that point, we would have been denied... Were you in communication with counsel? Yes, we were. Not regularly, but there were things that they did that we didn't necessarily think was appropriate or complete. Because we had reversed the bankruptcy court out of the Ninth Circuit that said we were entitled to the interest, and we thought that should have been raised more than it was. But our communications with them, they amended the Third Amendment complaint to include a brief mention of that. Where? Oh, in a footnote in the amended Third Amendment complaint. Where do we find that? Where? I'll have to look at that for you, Your Honor. Judges, anything else? No, Judge Wallach. No. Okay, Mr. Schooley. We'll turn to the other side, and please have that citation ready when you come up on rebuttal. Yes, ma'am. Let's hear from the other side. Government? Counsel? Yes, Your Honor. The trial court appropriately rejected Mr. Kinghorn and Mr. Huff's untimely motion to intervene, and correctly determined that they did not possess the requisite degree of legal interest in the judgment to justify intervention as a matter of right. The trial court also... Counsel? Yes, Your Honor. This is Judge Wallach. On page 7 of the Gray Brief, the appellants say your waiver arguments about their October 2019 settlement agreement are unfounded because they, quote, raised the change of circumstances and interest, close quote, later captured in that settlement agreement in their motion to intervene. I have two questions for you. One is, is there any merit at all to this argument? And two, have circumstances actually changed, and if they have, have appellants manufactured that change? Your Honor, I don't recall that the after-executed settlement agreement being mentioned in the motion to intervene, and I would be very surprised if it were there because the settlement agreement, as I understand it from their appendix, the first time I saw it was in the appendix to the appeal of this brief. It's dated October 2019, and their motion to intervene was February 27, 2019. So it is, in my view, in the government's view, the case that they have manufactured a basis to intervene after the fact. Of course, that would not be a proper basis to reverse the trial court's decision because this agreement was not presented to the trial court for its decision. In fact, they don't dispute any of the trial court's analysis of their particular legal rights under the agreement with respect to litigation, which is the operative legal document, at the time of the motion to intervene and the judgment. They're merely resting on this after-executed document, which, of course, was never presented to the trial court for review. For that reason, it's not effective to call the trial court's judgment into question. This is Judge Wallach again. I look forward to hearing what your opposing counsel has to say about that in his reply. Yes, Your Honor, and as for the timeliness of the motion, it's quite clear that the motion was not timely. The summary judgment briefing was submitted in January 2018. If you look at Appendix Page 157, it's quite clear that the only post-judgment interest is being sought at CDA interest. Specifically, how is that created? Go ahead. I'm sorry. Go ahead. Yes, Your Honor, I apologize. Mr. Barber, who's the attorney for the secured creditor's state in his concluding paragraph, I respectfully request that the court grant this motion an inner summary judgment in favor of plaintiffs and against the DOE in the amount of $9,842,711.83 plus CDA interest, accruing from October 22, 2010 until paid. The issue is that the pre-judgment interest that was sought, which is the applicable interest, all applicable interest, I believe it's referred to by my colleague, was included within that $9.8 million underlying district court award. So the only interest that's being sought, as clearly expressed in this motion for summary judgment, is the amount of that district court judgment, which included pre-judgment interest, plus CDA interest accruing from October 22, 2010 until paid. That's very clear. I don't think there's any credible claim that the would-be intervenors didn't know or shouldn't have known based on this briefing. And, indeed, if you read all the briefs that were submitted below, there's no discussion of post-judgment interest independent and apart from the CDA. So the idea that they did not know or shouldn't have known is simply not credible. Their argument to what you're saying seems to be that they requested the full amount and that was all that was necessarily required. The suggestion is that even in the absence of making specific arguments, calling out non-CDA interest by asking for the full amount, that included that. Why is that wrong? Because the $9.8 million, my understanding is the $9.8 million, that specific dollar figure that came out of the district court, included pre-judgment interest that the district court had awarded. If you look at the district court order, it also awarded some sort of compound post-judgment interest. That is never mentioned anywhere in the briefing, wasn't argued by the party, never came up. The only post-judgment interest that's ever mentioned in the brief is CDA interest, specifically occurring from October 22, 2010, the date of the certified claim until paid. There really doesn't seem to be, from the government's point of view, any ambiguity in the proceedings at all. Certainly, if we had understood them to be raising post-judgment interest in addition to pre-judgment interest, that is something the government would have briefed. But the government and the security creditors clearly had the same understanding of the proceedings. And candidly, it seems that if you look closely at the brief file in this case, it seems that the interveners did too. When they talk about what happened here, for example, on page 22, they say there's no reason for the interveners to have expected that the three GIT creditors would decline a simple request to alter or amend judgment. So they were already, I think, and it seems that their brief suggests that they were already in the posture of understanding that the release that they wanted had not been sought over a year beforehand, and they were going to seek this post-judgment relief, which is, of course, a misuse of Rule 59, because Rule 59 is not intended to allow parties to raise new arguments that could have been raised earlier. And correct me if I'm wrong, talking about the amount, what they're seeking in this post-judgment interest is like 50% of what the entire recovery was at the end of the day, right? It's like $4.5 million? Yeah, I think the total recovery with PDA interest ended up being something like $13 million, but this would add an additional $4.5 million or so on top of it. So I think for that reason, I mean, we also have a situation here to the extent we just consider timeliness of the arguments being raised. This is a situation where the prejudice, definitely the balance of prejudice falls in the government's favor because the government has undergone every single procedural step that would be necessary for us to achieve finality in this matter. We've achieved finality and only to receive a very unusual motion for post-judgment relief and to intervene when, as the child court noted, the case is not at a preliminary stage. We're already after judgment. The party's rights have been adjudicated. We're well on the road to deciding, in this case, not to appeal the underlying judgment. And now we get a whole new slew of arguments that could have been raised before. In those cases, when you're talking about timeliness and whether the court abused its discretion in determining that a filing was untimely, this is one of the factors that would weigh heavily against the intervention in this case from a timeliness perspective. Also of note, we point out in our briefs and actually appellants do not dispute, this is not a ministerial change. This is a, well, they pay lip service to this being a ministerial change, but this is not a simple matter or a typo made by the clerk. This is a whole different realm of arguments, significant arguments, implicating the government's sovereign immunity and immunity from interest in the absence of expressed consent to be subject to that kind of judgment. So given all these considerations, the child court was well within its discretion to rule this motion as untimely. Is it true that this post-judgment interest from the earlier litigation they're seeking would result in a double recovery to some extent because since there was pre-judgment interest awarded in this case? Yes, that's true. I think that mostly the duplication is most obvious, I think, is most obvious in the post-judgment context because the interest awarded by the district court was compound, whereas the CDA's interest is simple. And so you have, for the same time period, the running of both compounds, the simple interest, and the notion that sovereign immunity was ever waived to allow that flies in the face of the CDA, which occupies the space, that sort of answers the federal question for what kind of post-judgment interest can accrue. And also, as we noted in our briefing, and the appellants did not mention, that if you look at the way the FAR is constructed, interest is generally not allowed, is not allowable in situations that are roughly, I would say, roughly constructed. And roughly, now, this is quite too strong, but in circumstances that are constructed. Can I just, just for clarification, so is your answer to Judge Dyke's question yes, that the two interests that would have been some duplication with respect to the, some overlap in the amount with respect to the post-judgment interest, is that a yes? And you need to talk a little slower. I'm sorry. I got excited. Yes, my answer to Judge, the judge's question is yes. Okay. So, for these reasons, I think that the time use factors weigh heavily in the trial court's favor. And there's no dispute, right, that this would be, the court could resolve this issue on that question and not reach the other questions with regard to intervention? Yes, Your Honor, that's the case. But I do think it's also significant that in, when we talk about the court's actual analysis of the right, the appellants are relying on this after-executed settlement agreement and not actually alleging any error in the court's understanding and construction of the agreement with respect to litigation, which was the operative legal document. But if, in fact, the secured creditors had failed to request the full amount that would have given compensation to these appellants here, that would have been the basis for a motion for leave to intervene if it had been timely, right? I'm not sure I would go quite that far. I think because of this particular structure of the agreement that these individuals entered into, as this court found they had expressly signed away their control of the litigation, we made a judgment about their choice of counsel and the adequacy of the representation that they hoped to achieve and I think it would be a very unusual circumstance if a litigant in the Court of Federal Claims ended up not being happy with their counsel and attempted to intervene in a lawsuit just to get a better lawyer. So I think it goes without saying that under the particular, this is an unusual case in that the agreement respecting litigation strikes me as particularly ironclad in terms of getting the keys to the litigation to a different entity. So for that reason, I think that it would be very difficult for either Mr. Kinghorn or Mr. Huff, difficult if not impossible for them to justify intervention of right or permissive intervention even if their motion has been timely. If the panel has no further questions, Your Honor, for all the reasons stated today at oral argument in our booth, we respectfully request that you affirm the judgment of the top court. Thank you. Mr. Schooley, you've got some rebuttal time. Yes, Your Honor. I was asked where did the input from us get incorporated in the Third Amendment complaint. That's at the second footnote in Appendix 46, discusses the Ninth Circuit opinion that allowed us to seek interest against the Department of Energy. And the interest that we're seeking is awarded in the second amended judgment. At page 428. Appendix 428? Yes. And it's referred to in the four paragraphs on that page. And the $9,842,711.83 is the total of the $169.60, $149.97.23, and $1,045. Those three numbers added together is $9,842. It doesn't include pre- and post-judgment interest. But those awards refer to the calculation of post-judgment interest on those amounts from the three different dates as being compound. Now, it's compound was accepted by the government when it entered into its 1984. Yes, but your problem is they only asked for the $9,842,711.83. And they're specific on page 51 in the demand. And they did not ask for the post-judgment interest that was awarded in earlier litigation. And I'm not understanding why, seeing that, you didn't at that point ask for leave to intervene. It's because they also asked for, and I'm looking at the reply in the motion at appendix 198. They also asked for plus any applicable post-judgment interest. The only other applicable post-judgment interest is the amount set forth on appendix 428 in paragraphs 2, 3, and 4. No, that's CDA interest. CDA allows post-judgment interest, right? Yes, but in their request for relief, they asked for the CDA interest on set amounts until paid. And then also asked plus any applicable post-judgment interest. The only applicable post-judgment interest would be the interest awarded to DIT on appendix 428 in paragraphs 2, 3, and 4. And earlier in their motion, they said they were going to seek the full amount of the judgment, which would be at appendix 166. So we've taken the appendix 166 plus appendix 198 plus appendix 806. All of those things point to the additional post-judgment interest that's set forth in the second modified amended judgment. And it would not be duplicative because it's just additive. They get a credit for the CDA interest that was awarded, but then any additional post-judgment interest. And at the time of the briefing, we didn't ask for what ultimately was because we didn't know it would take so long for the government to pay. Any other further questions from the panel? Judge Wallace, no. No. Okay. Thank you. We thank both parties in the case to submit it. That concludes our proceeding for this morning. The Honorable Court is adjourned until tomorrow morning at 10 a.m. Good night.